IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |
|---|---|
| TONI M. MULLIGAN, | * |
| Plaintiff, | * |
| v. | *   CIVIL NO.: WDQ-06-2993 |
| CHARLES RUSSELL, ET AL., | * |
| Defendants. | * |
|  | * |

*    *    *    *    *    *    *    *    *    *    *    *    *

MEMORANDUM OPINION

Toni M. Mulligan, an African American woman, sued Charles "Rusty" Russell and Lyle C. Russell (the "Russells") for housing discrimination in violation of the Fair Housing Act[1]. Pending is the Russells' motion to dismiss. For the reasons discussed below, the motion will be denied.

I.   Background

In September 2003, the Housing Authority of the City of Annapolis (the "Housing Authority") accepted Mulligan into its Section 8 Voucher Program (the "Program"). Compl. ¶ 8. The Russells agreed to rent to Mulligan under the terms of the Program and the move-in date was September 19, 2003. *Id*. ¶ 9. The contract with the Housing Authority (the "Contract") established Mulligan's prorated rent for the remainder of

_____

[1] 42 U.S.C. § 3601 et seq.

1

September at $453, with the Housing Authority contributing $358 and Mulligan contributing $95. *Id.* ¶ 10. The monthly rent for the one year lease ending September 2004 was $1,234, with the Housing Authority contributing $975 and Mulligan contributing $259. *Id*.

At move-in, Charles Russell required Mulligan to pay $1,234 for September 2003 and $1,500 as a security deposit. *Id.* ¶ 11. In addition, Charles Russell demanded an additional monthly rental surcharge of $266. *Id.* ¶ 12. In demanding this surcharge, Charles Russell allegedly stated that it would: (1) allay his concerns regarding Mulligan's "family situation"[2]; and (2) bring her total rent to the amount he would receive for renting the property to "other folks." *Id*. Mulligan paid the demanded sums. *Id.* ¶ 13.

For over 24 months, the Housing Authority and Mulligan paid $1,234 under the Contract; Mulligan also paid the surcharge despite the Housing Authority's July 30, 2004 written notice to Mulligan and the Russells that the maximum rent payable to the Russells was $1,234. *Id.* ¶ 14.

In September 2005, the property was cited by the City of Annapolis Department of Neighborhood and Environmental Programs for, *inter alia*, inadequate smoke detectors and lead paint, mold,

---

[2] Mulligan is a single mother living with four children. Compl. ¶ 4. In addition, her estranged husband frequently would, with the knowledge of the Russells, stay with her as well. *Id*.

and weed height limit violations.  *Id*. ¶ 15.  On September 18,
2005, the Russells sent Mulligan a letter: (1) demanding that
Mulligan pay the $200 fine incurred for the Russells' absence
during the inspection;[3] and (2) raising the rent to $1,700 a
month.  *Id*.  The letter threatened eviction if the demands were
not met.  *Id*.  Mulligan agreed although at or around this time,
the Housing Authority had eliminated her required contribution.
*Id*. ¶ 16.

In the Fall of 2005, Mulligan discovered that her
electricity bills included another tenant's electricity used in a
freestanding garage.  *Id*. ¶ 17.  The other tenant had been paying
the Russells for the garage's electricity.  *Id*.

On March 4, 2006, the Russells sent a letter to Mulligan
demanding compliance with the rental increases and penalties and
giving Mulligan two options: (1) pay and stay; or (2) leave
within 30 days.  *Id*. ¶ 18; Compl. Ex. E (March 4, 2006 letter
from Rusty Russell to Mulligan).  An April 6, 2006 letter
demanded payment and required Mulligan's immediate departure.
*Id*. ¶ 19; Compl. Ex. F (April 6, 2006 letter from Rusty Russell
to Mulligan).  In addition to the letters, Charles Russell made
dozens of threatening phone calls and appeared at Mulligan's

---

[3] The letter attached to the complaint indicates that it may
have been Mulligan's duty to let the inspectors into the
apartment.  Compl. Ex. D (September 18, 2005 letter from Rusty
Russell to Mulligan).

residence demanding payment.  *Id*. ¶ 20.  On April 18, 2006, as a result of the harassment, Mulligan received a Peace Order from the District Court of Maryland for Anne Arundel County.  *Id*.  In April 2006, the Russells began eviction proceedings; they evicted her on June 29, 2006.  *Id*. ¶¶ 21-22.

II.  Analysis

The Russells have moved to dismiss, arguing that: (1) Mulligan has failed to adequately allege any actual discrimination or disparate treatment; and (2) a two-year statute of limitations bars recovery for many of the alleged acts. Mulligan counters that: (1) she has alleged discrimination sufficiently; and (2) the statute of limitations does not preclude recovery because the Russells' actions were a 'continuing violation.'

A.  Standard of Review

Under Rule 12(b)(6), a motion to dismiss should be granted "only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)); *Mylan Laboratories, Inc. v. Raj Matkari, et al.*, 7 F.3d 1130, 1134 (4th Cir. 1993).  All allegations are treated as true, and the complaint is viewed in the light most favorable to the

4

plaintiff.  *Mylan*, 7 F.3d at 1134.

In deciding a Rule 12(b)(6) motion, the Court will consider the facts stated in the complaint and any attached documents. *Biospherics, Inc., v. Forbes, Inc.*, 989 F.Supp. 748, 749 (D. Md. 1997) *aff'd* 151 F.3d 180 (4th Cir. 1998).  The Court may also consider documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  *Id.*

The court, however, "is not bound to accept as true a legal conclusion couched as a factual allegation. . ..  Nor is the Court bound to accept Plaintiff's conclusory allegations regarding the legal effect of the facts alleged." *Nat'l Cas. Co. v. Lockheed Martin Corp.*, 415 F.Supp.2d 596, 600-01 (D. Md. 2006) (citations omitted).  "[A] 'claim' cannot be stated in the form of a legal conclusion, without more." *Sheridan-Wyoming Coal Co. v. Krug*, 168 F.2d 557, 559 (C.A.D.C. 1948).  Indeed, "[a] complaint must contain more than the bare assertion of legal conclusions, and it must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *Hughes v. Sanders*, 469 F.3d 475, 477 (6th Cir. 2006); *accord Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003).

B.   Discrimination

Mulligan's sole count is based on the Russells' violation of 42 U.S.C. § 3604(b).  Section 3604(b) makes it unlawful "[t]o discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." 42 U.S.C. § 3604(b).  Section 3604(b) is broad in scope. *Thompson v. U.S. Dept. of Hous. and Urban Dev.*, 348 F.Supp.2d 398, 416 (D. Md. 2005).  Discriminatory overcharging, failure to repair, harassment, and eviction are barred by § 3604(b).

Claims under section 3604(b) may be based on a theory of discriminatory impact or discriminatory purpose.  *Id*. at 417. Mulligan's allegations focus on the latter as she alleges overt discrimination based on her race and familial status and not on disparate impact, i.e., "facially neutral actions that harmed residents in plaintiffs [sic] protected class more than other residents."  *Aloqaili v. Nat'l Hous. Corp.*, 743 F.Supp. 1264, 1268 (N.D. Ohio 1990).

Allegations of overcharged rent, failure to repair, harassment, and eviction are not transformed into allegations of discriminatory intent simply by asserting that the actions were taken because of the plaintiff's race or familial status.  The complaint must include factual allegations that support the additional assertion.

Many of Mulligan's assertions lack factual support.  *See e.g.*, Compl. ¶ 23(a)-(d) (stating simply that the Russells' wrongful acts were due to Plaintiff's race, color, sex, familial status, disability and/or national origin.).  Although Charles Russell allegedly stated that he would receive higher rents from "other folks," Compl. ¶ 12, this bare statement is scant evidence of racial animus.

Charles Russell allegedly imposed additional monthly charges to allay his concerns about her "family situation."  Compl. ¶ 12.  As Section 3604(b) protects Mulligan's familial status, *see* Compl. ¶ 23(a) (alleging a family that meets 42 U.S.C. § 3602(k)(1), which defines "familial status" as one or more children, under 18 years of age, living with a parent or legal guardian), Charles Russell's statement is direct evidence of discriminatory intent and sufficiently states a claim for discrimination on the basis of familial status.  *See Jordan v. Alternative Resources Corp.*, 458 F.3d 332, 346 (4th Cir. 2006) (discussing the influence of direct evidence of discrimination in employment under the *McDonnell Douglas* framework, which the Fourth Circuit discussed in the context of Fair Housing in *Pinchback v. Armistead Homes Corp.*, 907 F.2d 1447, 1451 (4th Cir. 1990)).

C.   Statute of Limitations

7

The Russells argue that 42 U.S.C. § 3613 bars much of Mulligan's claim.  Section 3613 states that "[a]n aggrieved person may commence a civil action . . . not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice . . . to obtain appropriate relief with respect to such discriminatory housing practice or breach."  42 U.S.C. § 3613(a)(1)(A).  The limitations period may be extended when the challenged violation is a continuing one; "the complaint is timely when it is filed within [two years] of the last asserted occurrence of that practice."  *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 381 (1982) (applying the previous 180-day statute of limitations).

As each monthly surcharge, allegedly required because of Mulligan's familial status, was arguably part of a discriminatory housing practice, the claim is not barred.  *See Moseke v. Miller and Smith, Inc.*, 202 F.Supp.2d 492, 503 (E.D. Va. 2002) (defining "practice;" statute of limitations requires only one act within the limitations period); *see generally Arellano v. Henderson*, 1998 WL 792233, *2 (4th Cir. 1998) (unpublished opinion) (citations omitted); *Emmert v. Runyon*, 1999 WL 253632, *5 (4th Cir. 1999) (unpublished opinion); *Thompson v. U.S. Dept. of Hous. and Urban Dev.*, 348 F.Supp.2d 398, 426 (D. Md. 2005). Accordingly, the motion to dismiss will be denied.

III. Conclusion

For the reasons stated above, the Russells' motion to dismiss will be denied.


<u>March 14, 2007</u>                          <u>          /s/               </u>
Date                                     William D. Quarles, Jr.
                                         United States District Judge